**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

|  |  |  |
|---|---|---|

ADRIAN PETRUS,                              *

      Plaintiff,                            *

                                               *

v.                                                      *               Case No.: GJH-20-3259

                                               *

KR CONTRACTING, INC.,                  *

      Defendant.                          *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OPINION**

In this action, Plaintiff Adrian Petrus, proceeding *pro se*, brings employment claims

pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the

Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. ECF No. 1. Now pending before

the Court is Defendant KR Contracting, Inc.'s Motion to Compel Arbitration and to Stay or, in

the Alternative, to Dismiss the Case. ECF No. 11. No hearing is necessary. *See* Loc. R. 105.6 (D.

Md. 2021). For the following reasons, the Motion is granted, and the action is dismissed.[1]

## I.      BACKGROUND[2]

Plaintiff is a former employee of Defendant KR Contracting. *See* ECF No. 1 at 5.[3] On

January 23, 2019, Plaintiff was injured while working. *Id.* He was taken to the Emergency Room

and was told that he would need further treatment. *Id.* Plaintiff's doctor told him to stop working

---

[1] Defendant's Consent Motion for Extension of Time to respond to the Complaint, ECF No. 6, is also granted.

[2] Unless stated otherwise, the facts relied on herein are taken from the Complaint, ECF No. 1, and presumed true. Liberal construction of the pleadings is appropriate where, as here, a party is self-represented. *See Spencer v. Earley*, 278 Fed. App'x 254, 259–60 (4th Cir. 2008) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

and to start treatment, so Plaintiff filed for workers' compensation in the District of Columbia.
*Id.* Plaintiff sent Defendant a doctor's note confirming his disability after each visit to the doctor.
*Id.*

On April 18, 2019, Plaintiff received an email from HR informing him that he had to pay
for health insurance. *Id.* Plaintiff responded to the email by stating that he had Veteran's Affairs
health coverage and that, according to his Collective Bargaining Agreement, he could waive
insurance. *Id.*[4] He also told HR that he was currently on workers' compensation. *Id.* Plaintiff had
a hearing relating to his workers' compensation claim on April 28, 2019. *Id.* Plaintiff alleges that
the parties agreed to postpone the hearing because representation for the insurance company did
not appear and the insurance adjuster was on vacation. *Id.*

On May 7, 2019, Plaintiff was fired. *Id.* When Plaintiff responded that he was currently
on workers' compensation and could not be fired, HR told him that they had no record of him
being on workers' compensation. *Id.* Plaintiff was reinstated on May 9, 2019 after his union
representation intervened. *Id.* At this time, however, Defendant stated that Plaintiff must return
to work by May 31, 2019. *Id.* Plaintiff was not cleared by his doctor to return to work by May
31, 2019. *Id.* When Plaintiff later informed Defendant that he was able to return to work, he was
told that Defendant considered him to have voluntarily resigned. *Id.* The union declined to file a
charge on Plaintiff's behalf. *Id.*

Plaintiff filed the Complaint on November 10, 2020. ECF No. 1.[5] In the Complaint,
Plaintiff brought discrimination and accommodation claims under the ADA. *Id.* at 5. Plaintiff

---

[4] As discussed later, Plaintiff is a member of the International Union, Security, Police, and Fire Professionals of America ("SPFPA"), which has a Collective Bargaining Agreement with Defendant. *See* ECF No. 3-1 ("Collective Bargaining Agreement").

[5] Plaintiff filed a Notice of Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC") as a supplement to the Complaint. ECF No. 3.

alleged that Defendant engaged in discrimination on the basis of disability in violation of the

ADA and that Defendant failed to reasonably accommodate his disability. *Id.* Plaintiff also

alleged that Defendant violated the FMLA. *Id.* Plaintiff alleged that he suffered financial

hardship and emotional harm from losing his job. *Id.*

Defendant filed the Motion to Compel Arbitration on March 12, 2021. ECF No. 11.

Plaintiff responded in opposition on April 2, 2021, ECF No. 13, and Defendant replied, ECF No.

14. Plaintiff has also sent other letters to this Court while the action has been pending. *See* ECF

Nos. 15, 16, 17.

## II.   STANDARD OF REVIEW

A court may compel arbitration under the Federal Arbitration Act ("FAA") if the parties

agreed in writing to arbitrate the dispute. *Adkins v. Labor Ready. Inc.*, 303 F.3d 496, 500–01 (4th

Cir. 2002); *see also* 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration an existing

controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract."). The FAA reflects the strong federal policy favoring arbitration. *Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). But "'even though arbitration has

a favored place, there still must be an underlying agreement between the parties to arbitrate.'"

*Adkins*, 303 F.3d at 501 (quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997)).

Where the parties dispute the validity of an arbitration agreement, "[m]otions to compel

arbitration . . . are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816

F. Supp. 2d 245, 251 (D. Md. 2011). Therefore, such motions "shall [be] grant[ed] . . . if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "the judge's

function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, the Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial,'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## III.   DISCUSSION

### A.  Motion to Compel Arbitration

"[A] litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal . . . to arbitrate the dispute.'" *Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). The only element at issue here is whether Defendant can meet prong two, whether there is a written agreement with an arbitration provision purporting to cover the dispute.[6]

"Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)); *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th

---

[6] The parties agree that there is a dispute and that it is related to Plaintiff's employment. *See* ECF No. 1 at 5; ECF No. 11-1 at 5. Plaintiff disagrees that he must arbitrate the dispute. *See* ECF No. 13 at 1.

4

Cir. 2015), *cert. denied*, 136 S. Ct. 1656 (2016) (finding courts compel arbitration "if (i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement"); *see also Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) ("We apply ordinary state law principles governing the formation of contracts, including principles concerning the validity, revocability, or enforceability of contracts generally. We also apply the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA.") (internal quotations and citations omitted). "However, the Supreme Court has emphasized that it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Johnson*, 148 F.3d at 377 (internal quotations and citations omitted).

Here, the Court applies the general contract principles of the District of Columbia, where the contract was formed.[7] "A motion to compel arbitration invokes the well-established

---

[7] The Collective Bargaining Agreement does not include a choice-of-law provision, and neither party has addressed which state law governs the contract. Here, Maryland choice-of-law rules apply because no federal interest directs otherwise. *See Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) ("In a federal question case that incorporates a state law issue, such as contract formation, a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise.").

"Maryland follows the *lex loci contractus* rule, under which 'the law of the jurisdiction where the contract was made controls its validity and construction.'" *Id.* (quoting *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d 466, 467 (1988)). A contract is made "where the last act necessary to make the contract binding occurs[,]" *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002), such as a final signature. Union representatives based in Washington, DC, completed the contract by being the last parties to sign. *See* ECF No. 3-1 at 31.

This Court also notes that, even if the Court applied Maryland general contract principles to the Agreement, the conclusion would be the same. *See Schneider Elec. Buildings Critical Sys., Inc. v. W. Sur. Co.*, 454 Md. 698, 706, 165 A.3d 485, 490 (2017) ("In Maryland, the fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis.") (internal quotations and citations omitted); *Walther v. Sovereign Bank*, 386 Md. 412, 425, 872 A.2d 735, 743 (2005) ("The favorable status which arbitration agreements are afforded in Maryland has been made explicitly evident by the Legislature in the enactment of the [Maryland Uniform Arbitration Act].").

preference for arbitration when the parties have expressed a willingness to arbitrate." *Friend v. Friend*, 609 A.2d 1137, 1139 (D.C. 1992). "The preference for arbitration is essentially a generalized inference of the parties' intent; courts will presume that an arbitration clause agreed upon by the parties was intended to foreclose judicial involvement in their disputes." *Id.*

Defendant argues that the Collective Bargaining Agreement ("CBA") between itself and the International Union, Security, Police, and Fire Professionals of America ("SPFPA") requires Plaintiff to arbitrate his claims. *See* ECF No. 11-1 at 5; *see also* ECF No. 3-1 at 1.[8] The SPFPA is a union that represents security officers and shift lieutenants employed by Defendant. ECF No. 3-1 at 3, CBA §§ 1.1, 1.2. Plaintiff and Defendant agree that Plaintiff was a member of the SPFPA and subject to the Collective Bargaining Agreement. *See* ECF No. 1 at 5; ECF No. 11-1 at 2. This leaves two issues for the Court to resolve. First, whether the Plaintiff's claims fall within the scope of the CBA's arbitration provision, and second, whether the provision is enforceable.

### 1. Scope

"Absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)). "To determine whether a particular claim is covered by an arbitration clause, we 'inquire merely whether the arbitration clause is susceptible of an interpretation that covers the dispute.'" *Parker v. K & L Gates, LLP*, 76 A.3d 859, 867 (D.C. 2013) (quoting *Haynes v. Kuder*, 591 A.2d 1286, 1289 (D.C. 1991)).

---

[8] Plaintiff filed a copy of the Collective Bargaining Agreement between KR Contracting, Inc., and the International Union, Security, Police, and Fire Professionals of America ("SPFPA") as a supplement to the Complaint. ECF No. 3-1. Defendant also attached a copy of the Collective Bargaining Agreement to this Motion. *See* ECF No. 11-2 at 6.

Section 13.1 of the Collective Bargaining Agreement provides for the processing of grievances. According to the Agreement:

> In order to establish effective machinery for a fair, expeditious and orderly adjustment of grievances, the parties agree that in the event any complaint or grievance arises over the interpretation or application of any provision of this Agreement, there will be an earnest effort to settle such complaint or grievances by the following procedure, the last step of which will be binding arbitration. . . .
>
> The parties expressly acknowledge that the duty to use this grievance procedure, including binding arbitration, includes any and all disputes between any Employee and the Company (and the Union and the Company) arising out of or relating to any Employee's employment with the Company, whether grounded in contract, tort, or statutory law (including, but not limited to, federal, state and local civil rights and employment laws such as Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, and the Fair Labor Standards Act). This duty to arbitrate shall apply to all claims which the Employee believe[s] he/she may have against the Company, its affiliated companies or any of its officers, owners, directors, employees or agents.

ECF No. 3-1 at 18.

Sections 13.2 through 13.6 detail the steps of the grievance procedure, which requires discussion with a supervisor, elevation of the issue to a Regional Manager, presentation to a Contract Manager, and then a meeting between a union representative and the Senior Vice President. *See* ECF No. 3-1 at 19, CBA §§ 13.2–13.5.

If a dispute is not resolved through those procedures, then the Collective Bargaining Agreement specifies that the grievance may be processed by the union to arbitration pursuant to either Section 13.7 or Section 13.13. ECF No. 3-1 at 19, CBA § 13.6. Section 13.7 governs "contract-based grievances," and Section 13.13 governs "non-contract claims," such as when an employee "asserts a common law or statutory claim other than solely a claim that the Company has failed to comply with the terms of this Agreement."

Plaintiff asserts claims under the ADA and the FMLA. *See* ECF No. 1 at 5. He also asserts that Defendant violated Article 5 of the CBA, *id.*, which is a non-discrimination provision providing that the "Company and the Union agree that they shall each comply with all federal and state . . . employment discrimination laws[.]" ECF No. 3-1 at 8.

 The CBA explicitly subjects "any and all disputes between any Employee and the Company . . . arising out of or relating to any Employee's employment with the Company, whether grounded in contract, tort or statutory law[,]" to arbitration. ECF No. 3-1 at 18, CBA § 13.1. The section specifically highlights that claims "grounded in statutory law" includes ADA and FMLA claims. *Id.* In addition, Article 5 notes that a "claim that the foregoing provision has been breached, or that the Company has breached any federal or state civil rights law, shall be resolved exclusively pursuant to binding arbitration[.]" ECF No. 3-1 at 8. The CBA also includes broadening language that the agreement to arbitrate is for "any and all disputes . . . arising out of or relating to" the employment. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (describing "arising out of or relating to" contractual language as "broad"). Thus, Plaintiff's claims are subject to arbitration.[9]

In response to the Motion to Compel Arbitration, Plaintiff argues that his claim arises under Section 8.5 of the CBA, and thus is not subject to arbitration. ECF No. 13 at 1. Section 8.5 of the CBA governs leave without pay for personal or non-FMLA medical reasons. *See* ECF No. 3-1 at 12. It details several procedures for requesting and approving leave. *Id.* Section 8.5 allows personal leave without pay for a maximum of 18 weeks in a 12-month period and requires that employees request leave in writing. *Id.* Any employee on this type of leave who does not return

---

[9] To the extent Plaintiff is attempting to raise other claims related to his employment, such as violations of workers' compensation laws or other state or federal anti-discrimination laws, those claims are covered by the arbitration provision as well. Those claims also "arise out" of his employment.

8

to work on terms as required by Defendant is considered to have "voluntarily resigned." *Id.* Section 8.5 notes that any "any alleged violation of this Section shall be subject to the grievance procedures set forth in Section 13 . . . but shall not be subject to the arbitration procedures[.]" *Id.*

However, Plaintiff does not assert a violation of Section 8.5. In the Complaint, Plaintiff's only reference to Section 8.5 is that he was told that he had "voluntarily resigned" under Section 8.5 but that section "does not apply to me." ECF No. 1 at 5. To the extent that Plaintiff's claim is that Section 8.5, or Defendant's application of Section 8.5, is in violation of the ADA or the FMLA, that claim arises under a federal statute and is subject to arbitration. Section 8.5's arbitration carve-out is limited to "any alleged violation of this Section"—or an alleged violation of the procedures detailed in that section. Thus, Plaintiffs claims fall under the arbitration provision's scope.[10]

### 2. Enforceability

Plaintiff argues that the arbitration provision in the CBA is unenforceable because it was negotiated by the union. *See* ECF No. 13 at 8. As a general matter, arbitration provisions in collective bargaining agreements, which are generally negotiated by unions, have been held to be valid and enforceable under the FAA. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258, 129 S. Ct. 1456, 1465, 173 L. Ed. 2d 398 (2009). Indeed, "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative." *Id.* (citing *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80, 119 S. Ct. 391, 396, 142 L. Ed. 2d 361 (1998)). "This Court has required only that an agreement

---

[10] The Court also notes that the parties are separately proceeding to arbitration, with Plaintiff represented by the union, over whether there was "just cause," as defined by Section 12 of the CBA, to discharge Plaintiff. *See* ECF No. 11-2 ¶ 9 (Kuhlman Decl.); ECF No. 14 at 2. Plaintiff has filed several letters in this Court on the status of that arbitration. *See* ECF Nos. 15, 16, 17. Defendant asserts that Plaintiff is essentially raising a Section 8.5 claim at that arbitration, despite the arbitration provision not applying to the section. *See* ECF No. 14 at 2.

to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement." *Id.* (quoting *Wright*, 525 U.S. at 80).

Here, Section 13.1 states that the parties to the contract "expressly acknowledge that the duty to use this grievance procedure, including binding arbitration, includes any and all disputes between any Employee and the Company … arising out of or relating to any Employee's employment … whether grounded in contract, tort or statutory law[.]" ECF No. 3-1 at 18. The provision goes on to list the covered claims as "federal, state and local civil rights and employment laws such as Title VII . . . , the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, and the Fair Labor Standards Act." *Id.* The agreement to arbitrate is explicitly stated and includes direct reference to anti-discrimination statutes.

Plaintiff next argues that arbitration effectively eliminates the ability to vindicate his statutory rights. *See* ECF No. 13 at 8. "The general rule is that federal statutory claims can be submitted to arbitration." *Parker*, 76 A.3d at 868. However, "the Supreme Court has recognized that arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies are not enforceable because they are in violation of public policy." *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). "Under this 'prospective waiver' doctrine, courts will not enforce an arbitration agreement if doing so would prevent a litigant from vindicating federal substantive statutory rights." *Id.*; *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235, 133 S. Ct. 2304, 2310, 186 L. Ed. 2d 417 (2013) ("The 'effective vindication' exception . . . originated as dictum in *Mitsubishi Motors*, where we expressed a willingness to invalidate, on 'public policy' grounds, arbitration

agreements that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

Choice of law provisions in arbitration agreements that implicitly waive federal or state law are thus unenforceable. *See Dillon*, 856 F.3d at 334. Also unenforceable is "a provision in an arbitration agreement forbidding the assertion of certain statutory rights" or "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable[.]" *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236, 133 S. Ct. 2304, 2310, 186 L. Ed. 2d 417 (2013).

The arbitration provision in the CBA does not prevent Plaintiff from vindicating his statutory rights. While the provision specifically applies to claims brought under anti-discrimination laws, in no way does the provision limit those claims. *See 14 Penn Plaza*, 556 U.S. at 266 ("[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'") (internal quotations omitted). The provision also does not, explicitly or implicitly, waive federal or state law rights or force an arbitrator to apply law other than applicable federal or state law. *See e.g.*, *Dillon*, 856 F.3d at 334.

Finally, Plaintiff argues that arbitration is expensive and that the expense is essentially a bar to vindicating his rights, ECF No. 13 at 8, but he has not provided the Court with information that would lead to the conclusion that the expense is so high as to make arbitration impossible.[11] *See Adkins*, 303 F.3d at 502 ("[W]here a party 'seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of

---

[11] The CBA requires the parties to bear their own expenses and split the cost of the arbitrator. *See* ECF No. 3-1 at 20, CBA § 13.9.

11

showing the likelihood of incurring such costs.'") (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81, 121 S. Ct. 513, 517, 148 L. Ed. 2d 373 (2000)).

Thus, the Motion to Compel Arbitration is granted.

**B.  Motion to Dismiss or Stay**

Defendant argues that this Court should dismiss the case, rather than stay it. ECF No. 11-1 at 8. Under the FAA, a court must "stay the trial of the action until such arbitration has been had[.]" 9 U.S.C. § 3. However, the Fourth Circuit has held that "[n]otwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001); *see also Bey v. Midland Credit Mgm't., Inc.*, No. 15-cv-1329-GJH, 2016 WL 1226648, at *5 (D. Md. Mar. 23, 2016). Because all of Plaintiffs' claims in this case are subject to arbitration, dismissal of this action is appropriate.

**IV.    CONCLUSION**

For the reasons discussed, the Motion to Compel Arbitration is granted. The action is dismissed. A separate Order follows.


Dated:  February      7, 2022                    /s/_____
                                                 GEORGE J. HAZEL
                                                 United States District Judge